*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**James L. TAYLOR Jr., Staff Sergeant**
United States Air Force, Appellant

**No. 24-0234**
Crim. App. No. 40371

Argued March 19, 2025—Decided June 10, 2025

Military Judges: Colin P. Eichenberger (arraignment
and motions) and Elijah F. Brown (trial)

For Appellant: *Major Frederick J. Johnson* (argued);
*Lieutenant Colonel Allen S. Abrams.*

For Appellee: *Captain Heather R. Bezold* (argued);
*Colonel Matthew D. Talcott*, *Lieutenant Colonel
Jenny A. Liabenow*, and *Mary Ellen Payne*, Esq. (on
brief).

Judge MAGGS delivered the opinion of the Court, in
which Chief Judge OHLSON, Judge SPARKS,
Judge HARDY, and Judge JOHNSON joined.

———————

Judge MAGGS delivered the opinion of the Court.

The Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) impose various limitations on trying reservists by court-martial. One limitation, found in R.C.M. 204(b)(1) (2019 ed.), states: "A member of a reserve component must be on active duty prior to arraignment at a general or special court-martial." Appellant argues that his court-martial violated R.C.M. 204(b)(1) because he is a reservist who was not on active duty at the time of his arraignment and trial. The Government responds that the Air Force had properly ordered Appellant to active duty under Article 2(d)(1), UCMJ, 10 U.S.C. § 802(d)(1) (2018), which provides in relevant part that a "member of a reserve component . . . may be ordered to active duty involuntarily for the purpose of . . . trial by court-martial."[1] We hold, however, that Article 2(d)(2), UCMJ,

---

[1] The complete text of Article 2(d)(1)-(2), UCMJ, which is the major subject of this appeal, is as follows:

> (d)(1) A member of a reserve component who is not on active duty and who is made the subject of proceedings under section 815 (article 15) or section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of—
>
> (A) a preliminary hearing under section 832 of this title (article 32);
>
> (B) trial by court-martial; or
>
> (C) nonjudicial punishment under section 815 of this title (article 15).
>
> (2) A member of a reserve component may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was—
>
> (A) on active duty; or
>
> (B) on inactive-duty training, but in the case of members of the Army National Guard of the United States or the Air National Guard

did not authorize ordering Appellant to active duty for trial by court-martial because Appellant was not "on active duty" or "inactive-duty training" at the time of the charged offenses, as the provision requires. Accordingly, we set aside the decision of the United States Air Force Court of Criminal Appeals (AFCCA), which affirmed the findings and sentence in this case. *United States v. Taylor*, No. ACM 40371, 2024 CCA LEXIS 316, at *2, 2024 WL 3597025, at *1 (A.F. Ct. Crim. App. July 31, 2024) (unpublished). We further set aside the findings and the sentence.

## I. Background

Appellant's reserve unit conducted a unit training assembly (UTA or "drill weekend") on Saturday and Sunday, December 7 and 8, 2019. During the day on Saturday, Appellant completed two four-hour periods of inactive-duty training.[2] On Saturday evening, Appellant attended a party at the home of someone in his unit. A.G., another member of Appellant's unit, was also at the party. After drinking at the party, A.G. went to sleep in a spare bedroom of the home.

A.G. testified that she awoke around 4:00 a.m. on Sunday morning to find Appellant touching and kissing her. She testified that she felt Appellant's lips upon her buttocks and his fingers in her vulva. She further testified that she had never indicated to Appellant that he could perform these acts. Appellant was scheduled to complete two additional periods of inactive-duty training on Sunday and is recorded as having completed them.

---

of the United States only when in Federal service.

[2] The precise meaning of the term "inactive-duty training" is a disputed issue in this appeal. In general, however, the term refers to a "duty prescribed for Reserves by the Secretary concerned under section 206 of title 37 or any other provision of law." 10 U.S.C. § 101(d)(7)(A) (2018). Under 37 U.S.C. § 206(a)(1) (2018), the Secretary concerned may prescribe regulations establishing periods of at least two hours for instruction and duties for which reservists receive compensation.

A charge and three specifications of sexual assault were preferred against Appellant on August 1, 2020, at a time when he was performing inactive-duty training. This charge was dismissed for reasons not relevant to this appeal. The same charge and specifications were re-preferred over a year later on October 20, 2021. The first specification alleged that on December 8, 2019, Appellant committed sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2018), by penetrating A.G.'s vulva with his fingers. The second and third specifications alleged Appellant committed abusive sexual contact in violation of Article 120, UCMJ, by touching A.G.'s vulva and buttocks, respectively, with his mouth. On November 19, 2021, a court-martial convening authority referred the charge and the three specifications to a general court-martial.

Major General Michael G. Koscheski subsequently issued an order involuntarily ordering Appellant to active duty for two days, March 21 and 22, 2022, "for the purpose of arraignment and motions for an alleged UCMJ violation." The order cited "Title 10, 802(d)" as authority for the involuntary order to active duty. The cited provision is Article 2(d), UCMJ, which, as noted above, authorizes a reservist to "be ordered to active duty involuntarily for the purpose of . . . trial by court-martial."

At his arraignment on March 22, 2022, the military judge asked trial defense counsel: "[I]s there any objection regarding jurisdiction over the accused at this point [in] time for the purposes of arraignment and motions practice?" Trial defense counsel answered: "Yes, Your Honor. We have not seen any orders with regards to actually administratively affecting or enacting—executing is the best word, his—Major General Koscheski's recall order." Trial defense counsel asserted that the Air Force needed to use a document such as "Air Force Form 938" to put Appellant in an active duty status. Trial defense counsel elaborated by saying: "This is how the process is supposed to go, there's supposed to be something that actually puts him on status, otherwise it's a recall for— certainly it's the authority to do so, but it hasn't actually

been enacted by the Air Force yet." The military judge rejected Appellant's argument and held that the Air Force had "properly recalled [Appellant] to active duty for the purposes of [the] arraignment."

The court-martial subsequently found Appellant guilty, contrary to his pleas, of the specification of sexual assault and the specification of abusive sexual contact alleging that Appellant touched A.G.'s buttocks with his mouth. The court-martial found Appellant not guilty of the other specification of abusive sexual contact. The court-martial sentenced Appellant to confinement for nineteen months, a reprimand, a reduction to the grade of E-1, and a dishonorable discharge. The convening authority disapproved the reprimand but took no other action.

On appeal to the AFCCA, Appellant again argued that the court-martial lacked jurisdiction over him because he was not properly ordered to active duty. *Taylor*, 2024 CCA LEXIS 316, at *31-33, 2024 WL 3597025, at *11-12. In making this argument, however, Appellant asserted for the first time that his order to active duty violated Article 2(d)(2), UCMJ, which provides that "a member of a reserve component . . . may not be ordered to active duty under [Article 2(d)(1), UCMJ] . . . except with respect to an offense committed while the member was . . . on active duty; or . . . on inactive-duty training." *Id.* at *34 & n.20, 2024 WL 3597025, at *12 & n.20. Appellant asserted that the offenses with which he was charged did not occur while he was "on active duty . . . or inactive-duty training" but instead occurred during the interval between his inactive-duty training on Saturday and Sunday. *Id.* at *34, 2024 WL 3597025, at *13.

The AFCCA rejected Appellant's argument. *Id.* at *39, 2024 WL 3597025, at *14. The AFCCA reasoned that Article 2(d)(2), UCMJ, had to be read in the context of Article 2(a)(3), UCMJ. *Id.* at *36-39, 2024 WL 3597025, at *13-14. Under Article 2(a)(3), UCMJ, which Congress had recently amended, reservists are subject to the UCMJ for offenses committed during "[i]ntervals between inactive-duty training on consecutive days, pursuant to orders or

regulations."[3] The AFCCA stated that it would be "absurd, and not what Congress intended" to hold that a reservist like Appellant was subject to the UCMJ during periods between inactive-duty training but that he could not be ordered to active duty to stand trial for offenses that he committed during such a period. *Id.* at *38-39, 2024 WL 3597025, at *14.

We granted review of the question:

> Article 2(d)(2), UCMJ, 10 U.S.C. § 802(d)(2), sets forth the authority to involuntarily order

---

[3] Article 2(a)(3), UCMJ, 10 U.S.C. § 802(a)(3) (2018), provides in relevant part:

> (a) The following persons are subject to this chapter:
>
> . . . .
>
> (3)(A) While on inactive-duty training and during any of the periods specified in subparagraph (B)—
>
> > (i) members of a reserve component; and
> >
> > (ii) members of the Army National Guard of the United States or the Air National Guard of the United States, but only when in Federal service.
>
> (B) The periods referred to in subparagraph (A) are the following:
>
> > (i) Travel to and from the inactive-duty training site of the member, pursuant to orders or regulations.
> >
> > (ii) Intervals between consecutive periods of inactive-duty training on the same day, pursuant to orders or regulations.
> >
> > (iii) Intervals between inactive-duty training on consecutive days, pursuant to orders or regulations.

Congress added the three periods listed in Article 2(a)(3)(B)(i)-(iii) in the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5102, 5542(a), 130 Stat. 2000, 2894-95, 2967 (2016).

members of reserve components to active duty for trial by court-martial. Did the Air Force Court of Criminal Appeals err by using the absurdity doctrine to interpret this provision in a manner that conflicts with the plain and unambiguous meaning of the statutory language?

*United States v. Taylor*, 85 M.J. 246 (C.A.A.F. 2024) (order granting review).

## II. Scope of This Court's Review

Before addressing the merits of the granted question, we must consider three arguments that the Government makes concerning the scope of our review. First, the Government argues, in essence, that any dispute about the meaning of Article 2(d), UCMJ, is moot. The Government asserts that the court-martial gained personal jurisdiction over Appellant when charges were first preferred while he was on inactive-duty training and that this jurisdiction was never lost regardless of whether Appellant was properly ordered to active duty under Article 2(d), UCMJ. We reject this argument because, as noted above, R.C.M. 204(b)(1), requires a "member of a reserve component [to] be on active duty prior to arraignment at a general or special court-martial." Thus, even if court-martial jurisdiction over the offense attached upon the initial preferral of the charge and specifications, Appellant still had to be on active duty at the time of his arraignment. Accordingly, the issue of whether Appellant was ordered to active duty in violation of Article 2(d)(2), UCMJ, is not moot.[4]

Second, the Government argues that Appellant expressly waived any objection to his order to active duty when trial defense counsel explained an objection at arraignment, quoted above, by saying "there's supposed to be something that actually puts him on status, otherwise it's a recall for—*certainly it's the authority to do so*, but it hasn't actually been enacted by the Air Force yet." (Emphasis added.) The Government interprets this statement as a

---

[4] The Government has not argued that Appellant was on active duty based on any other theory.

concession that the convening authority could order him to active duty and an intentional abandonment of any argument based on Article 2(d)(2), UCMJ. We disagree. Trial defense counsel's brief interjection about authority, made in the middle of another sentence, is simply too ambiguous to constitute a waiver.

Third, the Government argues that Appellant at the very least forfeited his argument based on R.C.M. 905(e), which generally provides that nonjurisdictional issues are forfeited if they are not raised at trial. The Government therefore argues that this Court can at most review the granted question for plain error. Appellant argues both that this case involves a jurisdictional issue that cannot be forfeited and, in the alternative, that even if the issue were forfeited, he would prevail under a plain error standard of review.

For simplicity, we will assume, without deciding, that an accused may forfeit objections to compliance with R.C.M. 204(b)(1) and Article 2(d)(2), UCMJ, and that Appellant forfeited them in this case. Based on these assumptions, we will review the granted issue only for plain error. These assumptions will not prejudice Appellant because we ultimately hold, for reasons explained below, that Appellant has demonstrated plain error and that the findings and sentence must be set aside.

### III. Plain Error Review of the Granted Issue

When conducting a plain error review of a nonconstitutional issue, this Court may grant relief only if the appellant proves that there was an error, that the error was clear and obvious, and that the error caused material prejudice. *United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) (citing *United States v. Powell*, 49 M.J. 460, 464-65 (C.A.A.F. 1998)).

### A. Whether There Was an Error

The answer to the granted question depends on the meaning of Articles 2(a)(3) and 2(d), UCMJ, and R.C.M. 204(b)(1). "The interpretation of UCMJ and R.C.M.

provisions and the military judge's compliance with them are questions of law, which we review *de novo.*" *United States v. St. Blanc*, 70 M.J. 424, 427 (C.A.A.F. 2012) (citations omitted).

R.C.M. 204(b)(1), as noted, provides: "A member of a reserve component must be on active duty prior to arraignment at a general or special court-martial." The meaning of this provision is not in dispute. The parties' disagreement is instead solely about whether the Air Force had properly ordered Appellant to active duty at the time of his arraignment. The Government argues that the Air Force properly ordered Appellant to active duty pursuant to Article 2(d)(1), UCMJ, which provides that a "member of a reserve component . . . may be ordered to active duty involuntarily for the purpose of . . . trial by court-martial." But Appellant argues that Article 2(d)(1), UCMJ, is limited by Article 2(d)(2), which provides, "a member of a reserve component . . . may not be ordered to active duty under [Article 2(d)(1), UCMJ] . . . except with respect to an offense committed while the member was . . . on active duty; or . . . on inactive-duty training." Appellant asserts that this limitation applies to him because his alleged offenses did not occur when he was on active duty or on inactive-duty training. Instead, they occurred during the interval between his inactive-duty training on Saturday and his inactive-duty training on Sunday.

We conclude that Appellant is correct, based on the plain language of Article 2(d)(2), UCMJ. Article 2(d)(2), UCMJ, precludes the involuntary ordering of a reservist to active duty for the purpose of trial by court-martial for offenses that did not occur when the reservist was on active duty or performing inactive-duty training. Congress could amend Article 2(d)(2), UCMJ, to cover intervals between two periods of inactive-duty training, but the current language of the statute does not include such periods.

The Government makes two responses that we reject. First, the Government argues that the term "inactive-duty training" should be interpreted to include the interval between two periods of inactive-duty training. Its argument

rests on Article 2(a)(3)(A) and (B), UCMJ. Subparagraph (A) says that members of a reserve component are subject to the UCMJ "[w]hile on inactive-duty training *and* during any of the periods specified in subparagraph (B)." Article 2(a)(3)(A), UCMJ (emphasis added). One of the periods listed in subparagraph (B) includes "[i]ntervals between inactive-duty training on consecutive days, pursuant to orders or regulations." Article 2(a)(3)(B)(iii), UCMJ. The Government argues that the word "and" in subparagraph (A) is ambiguous and that this Court should interpret "and" to mean "*which includes.*" Under this proposed interpretation, the phrase "inactive-duty training" would become a term of art "which includes" both inactive duty and the time between two sessions of inactive duty on consecutive days. If so interpreted, Article 2(d)(2), UCMJ, would not have prevented the Air Force from calling Appellant to active duty for offenses that occurred between periods of inactive-duty training because the term "inactive-duty training" would include such periods.

We are unpersuaded because we fail to see any ambiguity in the word "and" in Article 2(a)(3)(A), UCMJ. In addition, Article 2(a)(3)(B), UCMJ, draws a clear distinction between "inactive-duty training" and "intervals between inactive-duty training" because it uses the terms separately in both subparagraph (B)(ii) and subparagraph (B)(iii). The Government, furthermore, offers no explanation for how to reconcile the definition of "inactive-duty training" in 10 U.S.C. § 101(d)(7), which applies to all of title 10 of the United States Code, with its theory that Congress used Article 2(a)(3), UCMJ, to expand the meaning of inactive-duty training.

Second, the Government argues that following the plain language of Article 2(d), UCMJ, would lead to the absurd result of Congress expanding court-martial jurisdiction under Article 2(a)(3), UCMJ, to include intervals between periods of inactive-duty training but then providing the Government only very limited means for effectuating that new jurisdiction due to the limitation in Article 2(d)(2), UCMJ. The absurdity doctrine allows a court to depart from the

plain language of a statute only in very limited circumstances. In *United States v. McPherson*, this Court explained that "'a departure from the letter of the law' may be justified to avoid an absurd result if 'the absurdity . . . is so gross as to shock the general moral or common sense.'" 81 M.J. 372, 380 (C.A.A.F. 2021) (alteration in original) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)).

We hold that the plain reading of Article 2(d), UCMJ, does not lead to a result that is so shocking to the general moral or common sense that it qualifies as absurd. Congress clearly recognized that reservists at times commit offenses on the Saturday night during the interval between their Saturday and Sunday inactive-duty training. Congress made progress in addressing this situation by amending Article 2(a)(3), UCMJ, so that reservists are subject to the UCMJ during this period. Congress, however, has not yet completely solved the problem of authorizing the calling of such reservists to active duty to stand trial. This is not an absurd result. It is just a case of legislation not yet implementing what some consider optimal policy. As we have previously reasoned, "an 'unintentional drafting gap' is insufficient to warrant judicial correction; correction is the province of Congress in cases where an admittedly 'anomalous' result 'may seem odd, but . . . is not absurd.'" *McPherson*, 81 M.J. at 378 (alteration in original) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565-66 (2005)).[5]

### B. Whether the Error Was Clear and Obvious

We have concluded that an error occurred. Appellant was not properly ordered to active duty under Article 2(d), UCMJ, and his trial therefore violated R.C.M. 204(b)(1). The next question is whether this error was clear and

---

[5] The Government suggested at oral argument that there were other mechanisms for court-martialing Appellant. If the Government's position is correct, then the Air Force would not be entirely precluded from prosecuting Appellant for conduct that he committed during the interval between his inactive-duty training periods.

obvious. In addressing this question, we begin by noting that it was clear to both the Government and the military judge that Appellant had to be on active duty to be arraigned. Major General Koscheski purported to order Appellant to active duty for the purpose of his arraignment and motions. The military judge then specifically asked trial defense counsel about Appellant's status. It was also clear and obvious that whether the Air Force properly ordered Appellant to active duty depended on the meaning of Article 2(d), UCMJ, because General Koscheski's order specifically cited this provision.

The only question, then, is whether it was clear and obvious that Article 2(d), UCMJ, did not provide the Air Force with authority to order Appellant to active duty. This question only concerns the meaning of Articles 2(a)(3) and 2(d)(2), UCMJ. We have held that these provisions have a plain meaning—that the Government cannot involuntarily call a reservist to active duty to stand trial by court-martial for offenses that did not occur while the reservist was on active duty or in inactive-duty training. Once this plain meaning is recognized, the application of Article 2(d)(2), UCMJ, to the facts of this case is clear and obvious. Accordingly, we hold that the error of concluding Appellant had been properly ordered to active duty at the time of arraignment and arraigning him was clear and obvious.

### C. Whether There Was Material Prejudice

Appellant asserts that he was materially prejudiced by the error. He argues that the error allowed the trial to go forward and the court-martial to subject him to findings of guilt and a sentence, which would not have occurred if the requirements of R.C.M. 204(b)(1) had been followed. The Government does not contest the issue of prejudice in its brief. We therefore conclude that the prejudice requirement of the plain error analysis has been met and that Appellant is entitled to relief.

Because Appellant should not have been tried when the requirements of R.C.M. 204(b)(1) were not established, we must set aside the findings and sentence. We do not

dismiss the charges because the parties do not contest that Appellant was subject to the UCMJ at the time the alleged offenses occurred. A rehearing is authorized, provided that the requirements of R.C.M. 204(b)(1), and any other applicable requirements, are satisfied.

## IV. Conclusion

The granted question is answered in the affirmative. The decision of the United States Air Force Court of Criminal Appeals is set aside. The findings and sentence are set aside. A rehearing is authorized.